IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 19, 2008 Session

**STATE OF TENNESSEE v. RONNIE CORTEZ AKINS**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-A-861     Monte Watkins, Judge**

---

**No. M2007-01620-CCA-R3-CD -Filed November 18, 2009**

---

The defendant, Ronnie Cortez Akins, was convicted of first degree felony murder, a Class A felony; criminally negligent homicide, a Class E felony; and especially aggravated robbery, a Class A felony. He was sentenced as a Range I, violent offender to life in the Tennessee Department of Correction for the murder conviction and to twenty years on the robbery conviction, with the sentences to be served concurrently. On appeal, the defendant asserts that the evidence was insufficient to support his convictions and that the trial court erred in denying his motions to suppress a gun found during a protective sweep of his room and his statement to the authorities. After careful review, we affirm the convictions from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES, J., JOINED. NORMA MCGEE OGLE, J., concurred in results only.

Richard Dumas, Nashville, Tennessee, for the appellant, Ronnie Cortez Akins.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Deborah M. Housel and Jeff Burks, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This case involves the shooting death of the victim, a food delivery driver. The defendant and two associates followed the victim, held him at gunpoint, robbed him of his money, shot him, and took his car. The defendant was indicted for first degree premeditated murder, first degree felony murder, especially aggravated robbery, aggravated robbery, and especially aggravated

kidnapping.[1] The defendant filed a motion to suppress evidence obtained during a search of his room and a motion to suppress his statement to the authorities. The trial court conducted a hearing on the motions and subsequently denied both.

During the hearing on the motions to suppress, testimony was elicited from several law enforcement officers who participated in the investigation of the murder. The arresting officer testified that the defendant told him there was "a Luger in the house," which the officer understood to mean a gun. The arresting officer did not advise the defendant of his *Miranda* rights nor did he solicit a statement about the weapon. The defendant told the officer that the weapon was under the bed.

A detective testified that he heard the defendant yell that there was a .9 millimeter gun in the house. The detective said that he interviewed the defendant with a fellow officer, a sergeant, and advised the defendant of his rights. The detective testified that the defendant appeared to understand his rights and that he voluntarily waived them. The defendant acknowledged that he participated in the robbery and homicide.

The sergeant who participated in the interview of the defendant testified that he acquired written consent from the defendant's landlord to search the home where the defendant was staying. He said that he called for the defendant when they entered the home and that the defendant came out to them. He said they did a protective sweep of the residence after taking the defendant into custody. He said that he could see a pistol laying in plain sight on the floor at the end of the bed. The sergeant said that there was no indication that the room was the defendant's primary residence but appeared to be a hideout for the defendant.

The sergeant testified that the defendant told them he was involved in the robbery but said that someone else shot the victim. He recalled that the defendant said something about a lawyer, but the defendant went on to say that he did not need a lawyer. The sergeant said that they received two responses from the defendant indicating that he wanted to proceed without counsel, including a statement that he had nothing to hide.

A second detective testified that he assisted the sergeant in the protective sweep of the house and that he observed the gun in plain view under the bed. The detective testified that there was no entry into the residence prior to obtaining a consent to search.

The defendant testified that he wanted a lawyer when he first mentioned it. He said that he wanted a lawyer present while he was being questioned and that the questioning did not cease when he said he wanted a lawyer. The defendant said that he did not want to anger the officers so he

---

[1] The charges of aggravated robbery and especially aggravated kidnapping stemmed from an offense that occurred on a separate date and were severed from the first three counts of the indictment. This appeal rises only from counts one, two, and three.

answered their questions. The defendant testified that this was his first time in an interrogation room and that he was seventeen years of age at the time of the interview.

The defendant testified that he had been living in the home that was searched by the police "off and on" for approximately four months. He also said that his personal belongings were kept in the room searched by the police. The defendant said that he was sleeping when the police arrived and that he did not resist when they asked him to come out of his room. He said that they did not ask for consent to search his room and that he would not have left his gun in plain view at the foot of his bed because he knew that the homeowner did not like guns. On cross-examination, the defendant acknowledged that he said he had nothing to hide and did not need a lawyer. The defendant also acknowledged that he was on juvenile probation at the time of the underlying offenses. He had a prior juvenile adjudication for aggravated assault. The defendant admitted that he also lived with his aunt at times and that he moved from place to place to avoid being arrested on an outstanding probation violation warrant from the Juvenile Court.

In a written order, the trial court denied both the motions to suppress evidence and to suppress the defendant's statement to the police.

During the defendant's trial, officers from the Metro Nashville Police Department testified that they recovered latent fingerprints from the victim's vehicle, which had been stolen during the crime. The lead detective in the case directed that the victim's vehicle be processed. A co-defendant was arrested and provided the police with the defendant's nickname. Police went to the defendant's home after receiving information about his location. When the police arrived, they spoke with the owner of the home, and he consented to a search of the house. Upon entering the house, the police announced their presence. The defendant came out of his bedroom and was taken into custody. The police conducted a protective sweep of the house and found a pistol at the foot of the bed in the room where the defendant had been. The pistol was collected and processed for latent prints.

A co-defendant testified that he was riding with the defendant and some other friends when the defendant ordered the driver of the car to follow the "Best Wok" delivery car. They followed the car to the Tennessee State University campus, and the defendant said he was "about to rob." The defendant and two others exited the car and tied bandanas around their faces. The co-defendant said he heard the police arrive at the scene. He testified that the defendant and one accomplice returned to the car with money and a gun. One accomplice took the victim's car.

The medical examiner testified that the victim died of a single gunshot wound that pierced his right lung, aorta, pancreas, and stomach before lodging in his abdomen. She testified that the victim was shot from a distance of more than three feet.

The latent print examiner testified that the prints on the handgun matched the defendant's prints. A ballistics expert testified that the handgun was responsible for the victim's death.

The defendant's testimony regarding the events leading up to the crime were the same as the testimony of his co-defendant. The defendant admitted that he told the driver of their car to follow the delivery vehicle because he wanted to rob the victim. He testified that he did not go onto campus. The defendant testified that he walked toward campus with two other people and that those two people were responsible for stopping and detaining the victim. The defendant acknowledged that he took the money from the victim's pockets but said that he never pulled out his gun because his associate had his gun drawn on the victim. The defendant said he ran away from the scene until he heard a gunshot. He stopped running so he would not seem suspicious. The defendant testified that he was running with the money in one hand and a gun in the other hand. The defendant said he believed that Anthony Patton shot the victim.

During cross-examination, the defendant admitted that he always carried his gun. He said that he planned to rob the victim and that he knew that Anthony Patton also had a gun. He acknowledged the victim would be "easy pickings" because he would have cash and would be alone.

The jury convicted the defendant of first degree felony murder, criminally negligent homicide, and especially aggravated robbery. The conviction for criminally negligent homicide was merged into the conviction for first degree felony murder. The defendant received a life sentence in confinement for the murder conviction and twenty years for the especially aggravated robbery conviction.

Analysis

The defendant raises two issues on appeal: (1) the evidence was insufficient to support his convictions; and (2) the trial court erred in denying his pretrial motions to suppress.

First, the defendant contends that the evidence was insufficient to support his convictions for first degree felony murder, especially aggravated robbery, and criminally negligent homicide. He argues that the State failed to prove the elements of felony murder, specifically, that the killing was committed in the perpetration of a robbery. He submits that the State offered no proof to rebut his claim that he fled the scene at the conclusion of the robbery. He argues that his co-defendant killed the victim as he acted to rob him of his vehicle.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence, *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199

Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

Accordingly, the State is entitled to the strongest legitimate view of the evidence and all legitimate and reasonable inferences which may be drawn therefrom. *Tuggle*, 639 S.W.2d at 914; *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978). It is our duty to affirm the conviction if the evidence, viewed under the appropriate standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

First degree felony murder is the "killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery." T.C.A. § 39-13-202(a)(2). For first degree felony murder, "no culpable mental state is required for conviction . . . except the intent to commit the enumerated offense[]." T.C.A. § 39-13-202(b). Especially aggravated robbery is "the intentional and knowing theft of property from the person of another by violence or putting the person in fear" where the culprit uses a deadly weapon and causes serious bodily injury to the victim. T.C.A. §§ 39-13-401(a), -403(a).

Pursuant to Tennessee Code Annotated section 39-13-212(a), "[c]riminally negligent conduct that results in death constitutes criminally negligent homicide." In order to convict a defendant of criminally negligent homicide, the State must prove beyond a reasonable doubt: (1) criminally negligent conduct on the part of the accused; (2) that proximately causes; (3) a person's death. *State v. Jones*, 151 S.W.3d 494, 499 (Tenn. 2004); *see also* T.C.A. § 39-13-212(a).

Here, the defendant was in a car with four other people. The defendant told the driver of the car to follow the driver of a delivery vehicle because he planned to rob the driver. The defendant exited the car wearing a bandana on his face and brandishing a loaded handgun and walked toward the delivery vehicle. The driver of the delivery car, the victim, was held at gunpoint while the defendant physically took the victim's money. The victim was killed during the robbery. The fatal

wound to the victim was inflicted by the defendant's gun, which was later found in the room in which the defendant was staying at the time of his arrest.

The record reflects that the jury rejected the defendant's contention that the murder did not occur during the perpetration of the robbery of the victim. It was the defendant's intention to rob the victim at gunpoint, which posed a risk to the victim. Based on the record, the evidence was sufficient to support the defendant's convictions.

Next, the defendant argues that the trial court erred in denying his motion to suppress the statements he made to police on November 7, 2005. During that interview, the defendant was advised of his rights and initially inquired about needing a lawyer. Because the transcript contained in Exhibit 17 differs somewhat from the briefs filed and does not precisely correspond with the findings set forth by the trial court, we feel compelled to review the actual video recording and include our own transcript reflecting its contents as follows:

| | |
|---|---|
| Detective McGuire: | You have the right to remain silent. Do you understand that right? |
| Defendant: | Yes, sir. |
| Detective McGuire: | With that right in mind, do you wish to waive that right and answer questions now? |
| Defendant: | What that mean? |
| Detective McGuire: | Do you want to talk to me without a lawyer right now? |
| Defendant: | [Motion with right hand] Yeah, I need a lawyer. [Rubs his nose with left hand] |
| [Detective McGuire looks at Sergeant Batty, who is out of frame] | |
| Sergeant Batty: | You need a lawyer? |
| Defendant: | [Nods while looking at Sergeant Batty] Uh-huh. [Looks back at Detective McGuire] |
| Sergeant Batty: | Okay. |
| [Detective McGuire looks back at Defendant for about one second] | |
| | |
| Defendant: | Well, forget it, I don't need no lawyer, I can talk, I ain't got nothing to hide, I can talk. |
| Detective McGuire: | Okay, with that right in mind you wish to waive that right and answer questions now? |
| Defendant: | Uh-huh. |
| Detective McGuire: | Is that correct? |
| Defendant: | Yes, sir. |

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve

any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

Both the United States and Tennessee Constitutions protect the accused from compelled self-incrimination. *See* U.S. Const. amend. V; Tenn. Const. art I, § 9. As a result, police officers are prohibited from using statements made by the accused during custodial interrogation unless the accused has been previously advised of his or her constitutional rights to remain silent and to an attorney, and the accused knowingly, voluntarily, and intelligently waives those rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Whether waiver of a right is voluntarily, knowingly, and intelligently made is determined by the totality of the circumstances under which the right was waived. *See State v. Middlebrooks*, 840 S.W.2d 317, 326 (Tenn. 1992).

The State contends that the defendant did not make an unambiguous and articulate request for counsel. To effectively invoke the right to an attorney, a suspect must sufficiently and unambiguously articulate his or her desire to have counsel present so that, under the circumstances, a reasonable police officer understands the suspect's statement as a request for counsel. *Davis v. United States*, 512 U.S. 452, 459 (1994); *State v. Huddleston*, 924 S.W.2d 666, 669-70 (Tenn. 1996). If the suspect fails to make such an unambiguous request for counsel, interrogation may continue. *Id.* at 670.

The trial court found that the defendant made an unambiguous request for an attorney quickly followed by a statement that he did not need an attorney. We have reviewed the video of the police questioning and agree with the findings of the trial court. Once the defendant proceeded to talk and indicated that he did not need an attorney, he waived his right to an attorney at that time. The video demonstrates that the police advised the defendant of all of his rights and made sure that the defendant understood his rights before they asked him any questions about the crimes. The trial court found, and we agree, that there is no evidence that the defendant did not understand his rights and there is no evidence that the defendant was coerced into waiving his rights. The trial court properly determined that the defendant did not invoke his right to counsel. The defendant is not entitled to relief on this issue.

Next, the defendant argues that the trial court erred in denying his motion to suppress the gun discovered during the safety search of his residence. Ultimately, the gun was determined to be the murder weapon.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides protection from unreasonable searches and seizures. Additionally, Article 1, section seven of the Tennessee Constitution provides:

> [t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

This Court has held that seven factors determine whether a defendant enjoys an expectation of privacy: (1) property ownership; (2) whether the defendant has a possessory interest in the thing seized; (3) whether the defendant has a possessory interest in the place searched; (4) whether the defendant has a right to exclude others from that place; (5) whether the defendant has exhibited a subjective expectation that the place would remain free from governmental invasion; (6) whether the defendant took normal precautions to maintain his privacy; and (7) whether the defendant was legitimately on the premises. *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991) (quoting *United States v. Haydel*, 649 F2d 1152 (5th Cir. 1981)).

Here, the trial court found "that the defendant was a casual visitor in the home that the owner gave consent to search." The trial court further found that the defendant's presence at the residence "from time to time" was insufficient to give rise to a privacy interest in the house and its contents. The owner of the house, who allowed the defendant to stay there occasionally, gave permission to search the house on the date that the defendant was apprehended. The defendant also testified during the suppression hearing that he lived in different places to avoid being arrested for an outstanding probation violation warrant.

In *Maryland v. Buie*, 494 U.S. 325, 334, 110 S. Ct. 1093, 1098 (1990), the United States Supreme Court held that when a person is legally arrested in his home, officers may conduct a protective sweep of the rooms and closets in the home if they have reasonable and articulable facts which would warrant a prudent officer to believe that these areas harbor someone posing a danger to the officer. Here, the officers entered the house with the permission of the owner. They called for the defendant, and he presented himself. The Supreme Court in *Buie* stated:

> We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.*

The protective search was valid here because the defendant had been part of a multi-defendant, violent criminal act that resulted in the shooting death of the victim. For the protection of the arresting officers, it is reasonable that they would search the defendant's room for other conspirators. The detective who conducted the sweep specifically testified that he was concerned that someone might be hiding in the closet. During the protective sweep, the officers discovered the gun in plain view. Based on the record, the defendant has failed to demonstrate that the evidence preponderates against the trial court's findings that a valid search occurred or that the trial court erred in failing to suppress the gun as evidence.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE