Reversed and Rendered; Majority and
Dissenting Opinions filed June 2, 2011.

In
The

Fourteenth
Court of Appeals



NO. 14-09-00887-CR



Jeri Dawn
Montgomery, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 337th District Court

Harris County, Texas

Trial Court
Cause No. 1182462



 

MAJORITY OPINION

A jury convicted appellant Jeri Dawn Montgomery of
criminally negligent homicide and assessed her punishment at ten years’ imprisonment,
probated for ten years, and a $10,000 fine.  In eight issues, appellant argues
that the evidence against her is insufficient and the trial court erred by
excluding some of her expert’s testimony and limiting her cross-examination of
one of the State’s witnesses.  Because the evidence is not sufficient to
sustain the jury’s finding that appellant acted with the requisite mental state
for criminally negligent homicide, we reverse and render.

 

Background

            At about 8:30
p.m. on March 24, 2008, appellant was driving her Hyundai Santa Fe in the
center lane of the three-lane service road adjacent to Interstate 45.  Cochise
Willis had exited the freeway and was driving his Ford F-250 in the left lane
of the service road.  Terrell Housley, with Chance Wilcox in the passenger
seat, was driving a Chevrolet Blazer on the entrance ramp to the freeway, which
was to the left of the service road.  The ramp and service road were separated
by widening solid white lines, which formed a triangle often referred to as a
“safety barrier.”  The roads were dry but dark.

            Appellant was
talking on her cell phone with a friend.  When their call disconnected,
Appellant realized she had missed the entrance to the freeway, and she
attempted to move from the center lane of the service road to the entrance
ramp.  She began to pull into the left lane of the service road in front of
Willis.  Appellant was driving slower than Willis, who testified that he was
driving at the speed limit of fifty miles per hour.  When appellant “rather
abruptly” pulled into the left lane, Willis attempted to slow his F-250 and
move into the center lane, but he was unable to avoid hitting the rear of
appellant’s Hyundai.  The front left bumper of the F-250 struck the rear of the
Hyundai slightly right of center.  At the time of impact, appellant was almost
completely in the left lane, and Willis was about halfway between the left lane
and the center lane.  Appellant had not entered the safety barrier before she
was struck by Willis.

            Appellant could
not control her Hyundai after Willis struck her, and the Hyundai began to
rotate in a counterclockwise direction.  It crossed the safety barrier, and the
front of the Hyundai struck the middle of the passenger side of Housley’s Chevrolet
on the entrance ramp.  Appellant’s Hyundai flipped onto its driver’s side and
continued to skid on the pavement until it came to a stop.  Housley’s Chevrolet
began to rotate in a clockwise direction, and it jumped a curb separating the
entrance ramp and the left lane of the service road.  It flipped over and came
to rest upside down.  Wilcox was not wearing a seatbelt, and he was thrown out
of the Chevrolet during the accident.  He died at the scene.  Willis maintained
control of his vehicle and came to a stop in the emergency lane of the service
road.

            Ronald Soots, an
accident investigator with the Harris County Sheriff’s Office, was dispatched
to the scene of the accident.  He collected data at the scene, including
measurements of tire marks on the road, and conducted follow-up interviews. 
Brian Wilbanks, another accident investigator and reconstructionist with the
same office, was primarily responsible for reconstructing the accident.  Both
Soots and Wilbanks opined that appellant was responsible because she made an
unsafe lane change.  Wilbanks testified that Willis could not have avoided
striking appellant’s vehicle.

            Appellant was
indicted for the offense of criminally negligent homicide.  See Tex.
Penal Code § 19.05.  The indictment alleged that she made an unsafe lane change
and failed to keep a proper lookout and that her motor vehicle was used as a
deadly weapon.  During trial, the State emphasized appellant’s cell phone usage
immediately prior to the accident, urging the jury to “set a precedent”
regarding cell phone usage while driving.  The jury found appellant guilty of
criminally negligent homicide as alleged in the indictment and made an
affirmative finding on the deadly weapon issue, which increased the punishment
from a state jail felony to a third degree felony.  See id. §§
12.35(c)(1), 19.05(b).

Sufficiency of the Evidence

            In appellant’s
first six issues, she argues that the evidence is legally and factually
insufficient to support her conviction for criminally negligent homicide. 
While this appeal was pending, a majority of the Court of Criminal Appeals
agreed that only one standard should be used to evaluate the sufficiency of the
evidence in a criminal case:  legal sufficiency.  Brooks v. State, 323
S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); id. at 926
(Cochran, J., concurring).  Accordingly, we review the sufficiency of the
evidence in this case under a rigorous and proper application of the Jackson
v. Virginia, 443 U.S. 307 (1979), legal sufficiency standard.  Brooks,
323 S.W.3d at 906 (plurality opinion); Pomier v. State, 326 S.W.3d 373,
378 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

A.  Standard
of Review

When reviewing the sufficiency of the evidence, we
view all of the evidence in the light most favorable to the verdict to
determine whether a rational jury could find the essential elements of the
crime beyond a reasonable doubt.  Isassi v. State, 330 S.W.3d 633, 638
(Tex. Crim. App. 2010); Williams v. State, 235 S.W.3d 742, 750 (Tex.
Crim. App. 2007).  This court does not sit as a thirteenth juror and may not
substitute its judgment for that of the fact finder by re-evaluating the weight
and credibility of the evidence.  Isassi, 330 S.W.3d at 638; Williams,
235 S.W.3d at 750.  Instead, we defer to the fact finder’s responsibility to
fairly resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from the facts.  Williams, 235 S.W.3d at 750. 
These principles apply equally to circumstantial and direct evidence.  Isassi,
330 S.W.3d at 638.  Our duty as a reviewing court is to ensure that the
evidence presented actually supports a conclusion that the defendant committed
the crime.  Williams, 235 S.W.3d at 750.

We may also be required to determine as a matter of
law whether the State has alleged conduct that constitutes a criminal offense. 
Id.  To determine whether there is sufficient evidence of criminal
negligence, “it is not enough to provide the jury with a set of legally correct
definitions and then simply turn them loose and accept whatever they decide.”  See
id. at 753 (criminal recklessness).  We must be certain that the State has
proven a prima facie case of criminal negligence as a matter of law.  Id.

B.  Mental
State for Criminal Negligence

In appellant’s first and fourth points of error, she
challenges the sufficiency of the evidence to establish the culpable mental
state of criminal negligence.[1] 
In Texas, a person commits the offense of criminally negligent homicide if he
or she (1) causes the death of an individual, (2) ought to have been aware that
his or her conduct created a substantial and unjustifiable risk of death, and
(3) failed to perceive the risk, which is of such a nature and degree that the
failure constituted a gross deviation from the standard of care an ordinary
person would have exercised under the circumstances.  Stadt v. State,
120 S.W.3d 428, 433 (Tex. App.—Houston [14th Dist.] 2003), aff’d, 182
S.W.3d 360 (Tex. Crim. App. 2005); see also Tex. Penal Code § 6.03(d); Tello v. State, 180 S.W.3d 150,
156 (Tex. Crim. App. 2005); Graham v. State, 657 S.W.2d 99, 101 (Tex.
Crim. App. 1983).  Accordingly, in order to convict appellant of criminal negligence,
the State was required to prove not merely that she did something a person of
ordinary prudence would not have done, but that her failure to perceive that a
substantial risk of death would result from her conduct grossly deviated
from an ordinary standard of care.  See Tello, 180 S.W.3d at 156.

Criminal negligence entails a more culpable mental
state than mere civil negligence.  See Williams, 235 S.W.3d at 753.  The
distinction lies in the degree of deviation from an ordinary standard of care:  “[c]onduct
that constitutes criminal negligence involves a greater risk of harm to others
. . . than does simple negligence.”  Tello, 180 S.W.3d at 158–59
(Cochran, J., concurring).  The level of “‘carelessness required for criminal
negligence is appreciably more serious than that for ordinary civil negligence,
and . . . the carelessness must be such that its seriousness would be apparent
to anyone who shares the community’s general sense of right and wrong.’”  Tello,
180 S.W.3d at 158 (majority opinion) (quoting People v. Boutin, 555
N.E.2d 253, 254 (N.Y. 1990)).[2] 
To rise to the level of criminal negligence, the defendant’s conduct must
constitute more than a “‘[m]ere lack of foresight, stupidity, irresponsibility,
thoughtlessness, [or] ordinary carelessness, however serious the consequences
may happen to be.’”  Williams, 235 S.W.3d at 751 (first alteration in
original) (quoting People v. Carlson, 26 N.Y.S.2d 1003, 1005 (N.Y. Cnty.
Ct. 1941)).  It must be of such a nature that a level of moral blameworthiness
attaches.  See Williams v. State, 235 S.W.3d 742, 750-51 (Tex. Crim.
App. 2007); see also Tello, 180 S.W.3d at 158 (majority opinion) (“This
case . . . involves ‘some serious blameworthiness in the conduct that caused it.’”)
(quoting Boutin, 555 N.E.2d at 256).

As this court observed in Tello v. State, when
courts in Texas have addressed the level of evidence necessary to convict a
defendant of criminally negligent homicide resulting from vehicle-related
accidents, “speeding, racing, and intoxication often are contributing factors.” 
138 S.W.3d 487, 493 (Tex. App.—Houston [14th Dist.] 2004), aff’d, 180
S.W.3d 150.[3] 
None of these factors is present in the present case.  In Todd v. State,
there was evidence that the defendant was driving while distracted, as
appellant admittedly was in the present case; however, there was also evidence in
Todd of speeding and other egregious conduct supporting the conviction. 
911 S.W.2d 807, 815 (Tex. App.—El Paso 1995, no pet.).  Specifically, the
defendant in Todd was tailgating another vehicle in rush hour traffic
for about one and a half miles, traveling at a high rate of speed, and not
watching the road.  Id.  Five seconds after another vehicle changed
lanes to avoid a stalled vehicle in their lane, defendant struck the stalled
vehicle.  Id.

In vehicle cases where courts have upheld findings of
criminally negligent homicide without evidence of speeding, racing, or
intoxication, the evidence has clearly established a gross deviation from the standard
of care.  For example, two recent cases involved egregious misuse of a heavy
commercial vehicle or trailer.  See Tello, 180 S.W.3d at 156
(holding evidence was sufficient to sustain conviction for criminally negligent
homicide where evidence demonstrated defendant’s loaded trailer became
detached, killing pedestrian, after defendant used a faulty hitch with obvious
defects and that had been hammered a number of times in an attempt to get it to
latch properly and failed to utilize a safety chain); Mitchell v. State,
321 S.W.3d 30, 39-40 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d) (holding
evidence was sufficient where it demonstrated that defendant, holder of a
commercial driver’s license, was driving a 31,000 pound dump truck at 37 miles
per hour in a right-turn-only lane against a red light and failed to take
evasive action or apply his brakes despite being warned three times by a
passenger that a collision was imminent).[4]

At trial in the present case, the State presented
evidence of appellant’s use of a cell phone while driving, her unsafe lane
change, and her failure to maintain a proper lookout.  Only one of the three
factors was a moving violation under Texas law:  making an unsafe lane change.[5]  However,
the State placed primary emphasis on a factor that was not even listed in the
indictment as proof of appellant’s negligence:  cell phone usage.[6]  The State
analogized using a cell phone while driving to driving while intoxicated, a
moving violation subject to substantial criminal penalties.  See Tex.
Penal Code §§ 49.04, 49.09.  However, in doing so, the State could be seen as
“legislating through prosecution,” and, by continuing that emphasis in this
appeal, the State encourages this court to legislate through judicial fiat.[7]  Except
under very limited circumstances not at issue in this case, using a cell phone
while driving is not an illegal activity in Texas.[8]

Neither the State nor appellant has cited a case in
which a defendant was convicted of criminally negligent homicide because of the
defendant’s use of a cell phone while driving.  Neither has this court
discovered any criminally negligent homicide cases addressing the sufficiency
of the evidence when the defendant was driving and talking on a cell phone.[9]

Despite focusing on cell phone usage as the key
factor establishing that (1) appellant ought to have been aware of a
substantial and unjustifiable risk that a death would result from her actions,
and (2) her failure to perceive this risk was a gross deviation from the
standard of ordinary care, the State introduced no competent evidence establishing
that cell phone usage while driving increases the risk of fatal accidents. 
There were no human factors witnesses or scientific studies introduced at
trial.  One of the State’s witnesses, Ronald Soots, testified that he believed cell
phone usage was a factor in a growing number of accidents and could have been a
factor here, but he cited no data or studies in support of these bare conclusions.

Further, on cross-examination, appellant’s accident
reconstructionist, April Yergin, testified that recent studies have shown that
cell phone usage can be a distraction while driving and that there is a growing
public awareness of the issue; however, as mentioned, no such studies were
introduced or discussed in detail.  Yergin also acknowledged that (1) as an
accident specialist, her knowledge was well ahead of that of the general
public, and (2) she sometimes uses a cell phone while driving.  Appellant also
testified that she was distracted by her cell phone prior to the collision;
however, none of this evidence is sufficient to demonstrate that she ought to
have been aware of a substantial and unjustifiable risk that a death would
result from her actions or that her failure to perceive this risk was a gross
deviation from the standard of ordinary care.[10]

In addition to failing to present any evidence of an
increased risk of death, the State also failed to present any evidence that
such greater risk was generally known and disapproved of in the community.  As
the Court of Criminal Appeals has indicated, the level of “‘carelessness
required for criminal negligence . . . must be such that its seriousness would
be apparent to anyone who shares the community’s general sense of right and
wrong.’”  Tello, 180 S.W.3d at 158 (quoting Boutin, 555 N.E.2d at
254).

The Tennessee Supreme Court addressed analogous circumstances
concerning evolving community awareness and standards in State v. Jones,
151 S.W.3d 494 (Tenn. 2004), a case cited by the Texas Court of Criminal
Appeals in Williams.   The defendant in that case, Jones, was found
guilty by a jury of criminally negligent homicide under definitions very
similar to those in use in Texas.  Id. at 499-500.  In November 1998,
Jones was holding her two-year old son in her lap in the front passenger seat
of a vehicle that became involved in a minor traffic accident; the child was
killed when the airbag inflated.  Id. at 495-96.

In overturning Jones’s conviction and reversing a lower
appellate court’s decision, the Tennessee Supreme Court held that the evidence
was insufficient to demonstrate that Jones grossly deviated from the standard
of care.  Id. at 501, 503.  The court reached this determination despite
the fact that Tennessee had seat belt and child restraint laws in force at the
time of the accident and the State introduced into evidence newspaper articles
and television public service announcements to establish that information about
the safe transportation of children was available to the community.  Id.
at 500-501.  The Court first noted how new the risk of air bags was in 1998.  Then,
emphasizing statistics from one of the articles, showing that only about 60% of
area children were being properly restrained, the court reasoned that:

If 40% of the children being transported in Ms. Jones’
community were being transported without being properly restrained at the time
of the accident, it would be difficult for a rational trier of fact to conclude
that it was a gross deviation from the standard of care at the time of the
accident for Ms. Jones to transport her child improperly.

Id. at 501.  Applying
the reasoning in Jones to the present case, it would be difficult for a
rational fact finder to conclude that because accident investigators, such as
Soots and Yergin, might have been aware of increased risks from cell phone
usage, it was a gross deviation from the standard of care for a member of the
general public to use a cell phone while driving.

A distinction
between Jones and the present case is that in Jones, the conduct
in question (holding a child in the front seat of a car) was isolated
from other factors; whereas, here, the evidence supports the conclusion that
appellant’s cell phone usage may have contributed to her failing to keep a
proper lookout and making an unsafe lane change.  Nevertheless, the State has
maintained, both in the trial court and in the appeal, that it is the
additional factor of cell phone usage, i.e., distracted driving, which
converted a simple moving violation into criminally negligent homicide.  The
State failed to present evidence, however, that appellant’s conduct and failure
to perceive the risk attached thereto—while likely demonstrating “lack of
foresight, stupidity, irresponsibility, thoughtlessness, [and] ordinary
carelessness”—was a gross deviation from the ordinary standard of care
justifying criminal sanctions.  Williams, 235 S.W.3d at 751.  This case
is not like those discussed above involving high rates of speed, racing,
intoxication or other clearly egregious conduct; here, the State has shown no
more than distracted driving and a bad lane change.  Without evidence
establishing an increased risk of fatal crashes from cell phone usage and that
such risk was generally known and disapproved of in the community, the
additional factor of cell phone usage did not elevate appellant’s conduct to
criminally negligent homicide.  In short, the evidence was legally insufficient
to sustain the verdict.

We do not minimize the fact that Chance Wilcox tragically
died in this accident.  But Texas law makes clear that the circumstances for
assessing criminally negligent homicide are judged from the defendant’s
perspective at the time of his or her actions, not from hindsight.  See
Tex. Penal Code § 6.03(d); Williams, 235 S.W.3d at 751-53. Supported by additional
scientific research and increased public awareness, Texans may one day
determine that cell phone usage while operating a vehicle is morally
blameworthy conduct that justifies criminal sanctions; however, the State
failed to establish that such was the case in March 2008, at the time of this
accident.

We sustain appellant’s first and fourth points of
error.  Because we sustain these points of error, we need not consider appellant’s
remaining points of error.

We reverse appellant’s conviction and render a
judgment of acquittal.

 

                                                                                                                                                                                                                                                

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges,
Justice Jamison, and Senior Justice Hudson (Hudson, J., dissenting).[11]

Publish
— Tex. R. App. P. 47.2(b).









[1]Appellant
also argues that we should not consider any evidence of her cell phone usage in
determining the sufficiency of the evidence because the use of a cell phone was
not alleged in the indictment.  See Tex. Code Crim. Proc. art 21.15 (requiring specific acts of
criminal negligence to be alleged in the indictment).  However, we decline to
entertain such an argument made for the first time on appeal.  See Tex. R. App. P. 38.1(i); see also
Studer v. State, 799 S.W.2d 263, 272-73 (Tex. Crim. App. 1990) (holding
that an objection in the trial court is required to preserve error as to the
sufficiency of a charging instrument alleging acts required by article 21.15).





[2]
The court in Boutin reversed a conviction where the defendant struck a
police cruiser that was parked in the right lane of a highway with flashing
lights, killing an officer and a citizen, but the defendant was not speeding or
racing and did not disobey a traffic signal.  555 N.E.2d at 253-56.





[3]
Cf. Stadt, 182 S.W.3d at 364 (holding that a rational jury could
conclude that the defendant was criminally negligent when he, among other
things, was speeding and had taken a prescription medication that made him
drowsy); Graham v. State, 657 S.W.2d 99, 101 (Tex. Crim. App. 1983)
(affirming conviction when the defendant was speeding, racing, and ignoring a
steady red traffic control signal); Lopez v. State, 630 S.W.2d 936, 941
(Tex. Crim. App. 1982) (affirming conviction when the defendant was speeding
and ran a red light on a city thoroughfare); Brown v. State, 773 S.W.2d
65, 66-67 (Tex. App.—Fort Worth 1989, pet. ref’d) (affirming conviction when
the defendant was speeding, entered an intersection against a red light, did
not slow down as he approached or entered the intersection, and knew, from
traveling the road regularly, that the intersection required caution due to a
blind spot created by a curve in the road).





[4]
The Court of Criminal Appeals cases of Williams and Stadt,
wherein the court discussed many of the principles governing criminally
negligent homicide prosecution, did not involve challenges to the sufficiency
of the evidence on that offense.  Williams, 235 S.W.3d at 750-53, 769
(distinguishing criminal negligence from recklessness and reversing conviction
which was based on recklessness); Stadt, 182 S.W.3d 360, 365 (Tex. Crim.
App. 2005) (holding trial court properly charged jury on criminally negligent
homicide as a lesser included offense).  





[5]
Under section 545.060(a) of the Texas Transportation Code, “[a]n operator on a
roadway divided into two or more clearly marked lanes for traffic:  (1) shall
drive as nearly as practical entirely within a single lane; and (2) may not
move from the lane unless that movement can be made safely.”  Tex. Transp. Code
§545.060(a).





[6]
During closing argument, the State referenced appellant’s use of a cell phone
at least seven times.





[7]
In his closing, the prosecutor encouraged the jury to “set a precedent”
regarding cell phone usage while driving.  Arguments that cell phone usage
while driving should be made illegal in Texas are properly directed to the
legislature and not this court or the jury below.





[8]
Amendments to sections 545.424 and 545.425 of the Texas Transportation Code,
prohibiting young drivers from using cell phones and prohibiting all drivers
from using cell phones in school crossing zones, with certain exceptions,
became effective September 1, 2009, eighteen months after this accident.  Tex.
Transp. Code §§ 545.424–.425.





[9]
We note, however, that some courts in jurisdictions requiring only simple civil
negligence to convict a defendant for negligent homicide have considered
evidence the defendant used a cell phone while driving.  See Butts v. United
States, 822 A.2d 407, 416, 419 (D.C. 2003)
(holding evidence sufficient when the defendant was not speeding or driving
recklessly, but he was talking on cell phone and had a blood alcohol level of
more than twice the legal limit at the time of the accident; noting that
talking on a phone while driving does not establish negligence as a matter of
law, but it is evidence of negligence); Commonwealth
v. McGrath, 805 N.E.2d 508, 513–14 (Mass.
App. Ct. 2004) (holding evidence sufficient when the defendant inexplicably
struck a pedestrian on the side of the road, and it was not improper for
prosecutor to argue in closing that the jury could infer that the defendant was
using his cell phone at the time of the accident).





[10]
In addition to cell phone usage, many other activities commonly engaged in by
drivers can also be distracting:  changing radio stations, loading a CD into a
CD player, talking to someone in the passenger’s seat, searching for something
in the glove box, handing something to a child in the back seat, reading
billboard signs.  Under proper circumstances, these activities could cause
negligent driving.  However, in the absence of evidence establishing a
substantial and unjustifiable risk and a gross deviation from the standard of
ordinary care, mere distracted driving does not rise to a level of moral
blameworthiness necessitating the imposition of criminal sanctions.





[11] 
Senior Justice J. Harvey Hudson sitting by assignment.