**STATE of Tennessee, Appellee,**

v.

**Marcus SLATER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Sept. 3, 1992.

No Permission to Appeal Applied to the Supreme Court.

Robert D. Massey, Public Defender, Shara A. Flacy, Asst. Public Defender, Pulaski, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, Mike Bottoms, Dist. Atty. Gen., Lawrenceburg, for appellee.

**OPINION**

DWYER, Judge.

Marcus Slater appeals from the Giles County Circuit Court's judgment finding him guilty of criminally negligent homicide. He was sentenced to two years probation after entering a plea of *nolo contendere* and reserving the right to appeal a certified question of law that is dispositive of the case.

We will briefly outline the facts of the case. On March 20, 1991, Police Officers Jimmy Suggs, John Reynolds and Robert Barnes responded to a disturbance call at about 8:00 p.m. Upon arriving first at the scene, Officers Suggs and Reynolds found a fight between two men. The officers were trying to gain control over one of the men, the appellant, as Officer Barnes arrived. Mr. Slater resisted the officers and a fight ensued, with the officers trying to place handcuffs on the appellant. During the melee, Officer Suggs suddenly fell down across a thorny bush, where he remained motionless.

The two other police officers continued to try to put the handcuffs on the appellant, while also using their walkie-talkies to request an ambulance. Sergeant Reynolds twice warned Mr. Slater to stop resisting as a police officer was down and possibly hurt, although neither officer stopped to attend to their fallen comrade. An ambulance arrived after three to four minutes, but attempts to revive Officer Suggs were futile.

The County Coroner, Dr. Lilia Mauricio, testified that Officer Suggs died of an acute myocardial infarction. Dr. Mauricio added that Officer Suggs had atherosclerosis far beyond what would be expected in a man of his age, with some arteries blocked eighty percent. His heart was also greatly oversized, meaning he had congestive heart failure. The autopsy determined that he had dead muscle injury around the heart from a previous heart attack and had probably had the heart attack twelve hours

prior to his death. Emergency room records reflected that he complained of indigestion approximately twelve hours before his death.

Dr. Mauricio's opinion was that the fatal heart attack was brought on by the progression of his heart disease. She suggested that his fatal heart attack could have happened while he was lying in bed reading a book and was not necessarily related to the incident with Mr. Slater. She also could not add with any medical certainty whether immediate cardiopulmonary resuscitation (CPR) would have prolonged his life at all.

The appellant argues that his conduct in resisting arrest in the manner set forth is not legally sufficient to sustain a conviction for criminally negligent homicide under Tennessee Code Annotated § 39–13–212. After close review of the record, we must agree with his conclusion.

Under Tennessee Code Annotated § 39–13–212(a), criminally negligent homicide consists of "criminally negligent conduct which results in death...." The Sentencing Commission Comments state that the mens rea for that crime is defined in T.C.A. § 39–11–302(d), which makes it clear that simple negligence, as defined in civil law, is insufficient for criminal liability. Section 39–11–302(d) states that criminal negligence requires "a substantial and unjustifiable risk" of such nature that "the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint."

While the appellant's resistance to arrest might not have been the triggering cause, his obstinate refusal to cease his struggle evidently tied up the other police officers for three or four additional minutes. The State argues that that delay prevented the officers from giving vital CPR to the fallen officer, which could have prevented his demise. Unfortunately for the State, that argument is not persuasive.

Given a choice between aiding their brother-officer and handcuffing the appellant, the officers chose the latter course. However, had they chosen to let one officer arrest him, with the other administering first-aid, there is still no proof that Officer Suggs could have been saved. From all testimony, it is well possible that he was dead when he fell into the bush. He did not cry out or move, and the coroner testified that there was no indication that even immediate CPR could have saved him.

Moreover, there was no way for the appellant to know why the officer fell. He could not have reasonably perceived a "risk of such nature." As far as whether he had a duty to stop struggling when Officer Suggs fell, clearly he did since he was resisting arrest. Did that duty rise to the level required by T.C.A. § 39–11–302(d)? We think not. Tennessee Code Annotated § 39–11–302 views the situation through the eyes of the suspect and whether he could have perceived and then chosen to ignore a "substantial and unjustifiable risk."

What did the suspect perceive? Based on the evidence before us, we know it was nighttime and he was struggling with several police officers while in an agitated state. He knew he did not punch or kick them, but tried to avoid being handcuffed. One of the officers fell, a fact which might not have been readily apparent to him in the dark and confusion. Sergeant Reynolds told him to stop struggling because an officer was down, but evidently neither surviving police officer judged their comrade's situation serious enough to assist him. Even if one officer could not have handled the appellant, they knew his identity and he was wearing handcuffs. While there was no duty on them to assist Officer Suggs, we note that we can best understand what transpired that night by seeing all the parties' perceptions. If they did not know Officer Suggs was so seriously injured, if not already dead, it is not reason-

able to expect the appellant to have perceived it.

The appellant is clearly guilty of resisting arrest, but under the facts outlined, he is not guilty of criminally negligent homicide. Under the circumstances, the appellant's acts did not constitute a gross deviation from the standard of care required to support the conviction. Accordingly, the conviction of criminally negligent homicide is reversed and dismissed.

PEAY and SUMMERS, JJ., concur.