STATE of Tennessee

v.

**Latrece JONES.**

Supreme Court of Tennessee, at Knoxville.

Sept. 9, 2004 Session.

Nov. 23, 2004.

Ardena J. Garth, District Public Defender, and Donna Robinson Miller, Assistant District Public Defender, Chattanooga, Tennessee, for the Appellant, Latrece Jones.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; William H. Cox, III, District Attorney General; and C. Parke Masterson, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J. and JANICE M. HOLDER, WILLIAM M. BARKER, JJ., and J.S. DANIEL, SP.J., joined.

We granted this appeal to determine whether the evidence supported the defendant's conviction for criminally negligent homicide in the death of her two-year-old son. The child was riding on the defendant's lap in the front passenger seat of a rental car and was killed when the passenger-side air bag deployed in a collision.

The Court of Criminal Appeals upheld the conviction, concluding that the evidence was sufficient to sustain the jury's verdict, that the defendant's conduct was the proximate cause of the victim's death, and that the trial court did not err in admitting evidence regarding car seat safety. After carefully reviewing the record and the evidence, we conclude that the trial court did not abuse its discretion in admitting evidence regarding car seat safety. However, we conclude that the evidence was insufficient to support the conviction because the defendant's conduct did not constitute a gross deviation from the standard of care. Accordingly, we reverse the judgment of the Court of Criminal Appeals and dismiss the conviction. Because we dismiss the defendant's conviction due to insufficient evidence, we do not reach her arguments that her conduct was not the proximate cause of her son's death and that the trial court's instruction to the jury on proximate cause was error.

On November 9, 1998, defendant Latrece Jones, age eighteen, was riding in the front passenger seat of a rented Chevrolet Cavalier in Chattanooga, Tennessee. Her two-year-old son, Carlon Bowens, Jr., was asleep in her lap. Carlon's aunt, Letitia Abernathy, had rented and was driving the rental car; five children and one adult sat in the backseat. At the intersection of Shallowford Road and Jersey Pike, another car failed to yield the right of way to the rental car, causing a collision ("the accident").[1] Although the accident was not severe, the passenger-side air bag deployed. The force with which the air bag struck Ms. Jones' son broke his neck, killing him. No one else in the car was seriously injured.

Ms. Abernathy, the driver of the rental car, testified that she operated a day care business out of her home. The five children in the back seat, one of whom was her daughter, were under her care at the time of the accident. The children were aged seven years, six years, five years, four years, and nine months. Ms. Abernathy testified that she normally drove a jeep, but because she had been in an accident earlier in the day she had rented the Chevrolet. She testified that she normally had car seats for the children who required restraints but that she did not use them that day because there was not room in the Chevrolet. It was stipulated that the six passengers in the back seat were unrestrained.[2]

It was undisputed that only Carlon sustained serious injuries. Pediatric surgeon Dr. Joseph Earl Kelley, Jr., testified at trial that he had treated the victim and that the force of the air bag deployment had broken the child's neck. He testified that it was "not the type of injury that would typically be seen from motor vehicle accidents when children are unrestrained and thrown around." Dr. Kelley testified that an injury such as the one Carlon sustained is always fatal.

The prosecution introduced photos showing air bag warnings affixed to the

---

1. It was stipulated that the accident was the fault of the other driver, who failed to yield the right of way to Ms. Abernathy.

2. The driver, Ms. Abernathy, was charged separately with criminally negligent homicide and violation of the child restraint law. She pled guilty to reckless endangerment and violation of the child restraint law. At the time of the accident, Tennessee's child restraint

law required children under four years old to be in a "child passenger restraint system meeting federal motor vehicle safety standards." Tenn.Code Ann. § 55–9–602(a) (1998). The statute only applies to drivers, providing that "[a]ny person *transporting* a child ... is responsible for ... properly using a child passenger restraint." *Id.* (emphasis added).

rental automobile's visors and front-passenger seat belt. The visor warning was positioned on the side of the visor facing the passenger and read as follows:

!WARNING

DEATH or SERIOUS INJURY can occur

Children 12 and under can be killed by the air bag.

The BACK SEAT is the SAFEST place for children.

NEVER put a rear-facing child seat in the front.

Sit as far back as possible from the air bag.

ALWAYS use SEAT BELTS and CHILD RESTRAINTS.

The seat belt warning was positioned in the center of the passenger-side seat belt, although it is not clear from the record whether the warning would have been visible if the seat belt were not extended. The seat belt warning read as follows:

!CAUTION

A child in a REAR–FACING CHILD RESTRAINT can be badly injured by the air bag if it inflates. NEVER put a child in a REAR–FACING CHILD RESTRAINT in the front seat of this vehicle. Secure a REAR–FACING CHILD RESTRAINT in the rear seat.

Before Securing a forward-facing child restraint, ALWAYS move the passenger seat as far back as it will go. Or, secure the child restraint in the rear seat.

For more information, see your Owner's Manual and the instructions that came with your child restraint.

The prosecution also introduced other evidence in its effort to establish that Ms. Jones knew her son should have been in a child restraint and should not have been seated in front of an air bag. Lisa McClain, administrator for the Women's and Infant's Services Division at Erlanger Hospital, testified that when Ms. Jones was discharged after giving birth to Carlon, she would have been given a pamphlet on car seat safety and a videotape including information on car seat safety. The pamphlet included the warnings, "[n]ever hold a child in your lap while riding in either the front or back seat" and "[b]e consistent! Always buckle your child in the safety seat." Ms. McClain testified that the hospital's policy was to require parents to place the infant in the car seat themselves upon discharge from the hospital.

Finally, the prosecution offered the testimony of Brooke Pippenger, former assistant director of programs at the Children's Wellness Center, regarding a campaign the Center conducted in 1997 and 1998 aimed at educating the public on preventing injuries to children. Ms. Pippenger testified that the campaign included educating the public about vehicle safety. The State introduced into evidence two television news features and a collection of newspaper articles regarding car seat safety and the dangers of air bags related to the campaign. Ms. Pippenger testified, however, that she had never "f[ou]nd any law that made it illegal to put a child safety seat or a child in front of an air bag."

The jury convicted Ms. Jones of criminally negligent homicide in the death of her son, and the trial judge imposed a sentence of 0.9 years unsupervised probation. Ms. Jones appealed to the Court of Criminal Appeals. She argued that the evidence was insufficient to support the conviction for criminally negligent homicide, that the jury instructions on proximate cause were erroneous, and that the trial court erred in admitting evidence about the child restraint law and the absence of car seats in the vehicle at the time of the crash. The Court of Criminal Ap-

peals rejected each of Ms. Jones' arguments and affirmed her conviction. We granted review.

## ANALYSIS

### Admissibility of Child Restraint Evidence

■ First, we address Ms. Jones' argument that the child restraint evidence introduced at trial was irrelevant and prejudicial because, as a passenger, she did not have a statutory duty to place her child in a car seat and because the medical evidence showed that the child was killed by the air bag. At oral argument, counsel for Ms. Jones asserted that even if Carlon had been in a car seat, he would have been killed by the air bag because he was seated in the front seat. The State counters that the evidence was relevant to show that Ms. Jones ignored well-known risks to the victim. We agree with the State that the evidence was admissible.

■ Ms. Jones argued to the trial court in a motion in limine and in her motion for a new trial that the car seat evidence should have been excluded as irrelevant and prejudicial. The trial court denied Ms. Jones' motion in limine in part and granted it in part. The court agreed to exclude evidence regarding Tennessee's car seat statute, Tennessee Code Annotated section 55–9–602 (1998), because it did not apply to Ms. Jones as a passenger. However, the court declined to exclude evidence regarding information in the community regarding car seats. We review the trial court's decision for abuse of discretion. *State v. Edison,* 9 S.W.3d 75, 77 (Tenn.1999); *State v. McLeod,* 937 S.W.2d 867, 871 (Tenn.1996).

Evidence is relevant and therefore admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice...." Tenn. R. Evid. 403. Ms. Jones was charged with criminal negligence in the death of her son. Therefore the State's burden was to prove that in holding her son on her lap while traveling in a car, she failed to perceive a substantial and unjustifiable risk to her son and that her conduct was a gross deviation from the standard of care. Tenn.Code Ann. §§ 39–11–106 (2003), 39–13–212 (2003). Ms. Jones argues that the evidence was prejudicial because the State was trying to "inflame the jury" by showing Ms. Jones to be irresponsible. However, we agree with the State that the evidence was relevant to show that Ms. Jones was aware, or should have been aware, of the danger to an unrestrained child and that, in any event, its probative value was not outweighed by the danger of unfair prejudice to Ms. Jones.[3] Ms. Jones argues that Carlon was killed by the air bag, not by being unrestrained, but that argument misses the point. The State charged Ms. Jones with criminal negligence for the act of holding her child in her lap in a moving vehicle. Evidence about car seats and car seat safety was directly relevant to show that Ms. Jones' act was negligent. The trial court did not abuse its discretion in admitting the evidence.

### Criminal Negligence

■ We next address Ms. Jones' argument that the evidence of criminal negli-

---

**3.** Ms. Jones did not request a 404(b) hearing at trial or in her motions before the trial court. Accordingly, we do not consider whether the evidence should have been excluded under Tennessee Rule of Evidence 404(b).

gence was insufficient to sustain her conviction. To establish criminally negligent homicide, the State must prove three elements beyond a reasonable doubt: (1) criminally negligent conduct on the part of the accused; (2) that proximately causes; (3) a person's death. *State v. Farner*, 66 S.W.3d 188, 199 (Tenn.2001) (citing Tenn. Code Ann. § 39–13–212(a) (defining criminally negligent homicide as "[c]riminally negligent conduct which results in death . . . .")).

Ms. Jones argues that the evidence is insufficient to support her conviction for criminally negligent homicide because the evidence does not establish that she was grossly negligent. The State argues that the evidence supports the jury's determination that Ms. Jones' failure to perceive the risk to her son was a gross deviation from the standard of care.

▬▬ When evaluating the sufficiency of the evidence, we must determine whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn.2004) (quoting *State v. Reid*, 91 S.W.3d 247, 276 (Tenn.2002)). When considering the record, we must afford the prosecution " 'the strongest legitimate view of the evidence,' " as well as " 'all reasonable and legitimate inferences that may be drawn' " from the evidence. *Id.* (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn.2000)).

Criminally negligent conduct that "results in death constitutes criminally negligent homicide." Tenn.Code Ann. § 39–13–212(a). A person acts with criminal negligence

with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk

must be of such a nature and degree that the failure to perceive it constitutes a *gross deviation from the standard of care* that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint[.]

Tenn.Code Ann. § 39–11–106(a)(4) (2003) (emphasis added); *see also* Tenn.Code Ann. § 39–11–302(d) (2003) (providing the same definition under "culpable mental state[s]").

To be criminally negligent, a defendant must fail to perceive a substantial and unjustifiable risk. Tenn.Code Ann. § 39–11–106(a)(4); *see also State v. Owens*, 820 S.W.2d 757, 760 (Tenn.Crim.App.1991). Whether the defendant failed to perceive the risk must be determined using a subjective standard; we must view the circumstances "from the accused person's standpoint." Tenn.Code Ann. § 39–11–106(a)(4); *see also State v. Slater*, 841 S.W.2d 841, 842 (Tenn.Crim.App.1992) ("[The criminally negligent homicide statute] views the situation through the eyes of the [defendant] and whether [s]he could have perceived and then chosen to ignore a 'substantial and unjustifiable risk.' "). The defendant's failure to perceive the risk must be "a *gross deviation* from the standard of care." Tenn.Code Ann. § 39–11–106(a)(4) (emphasis added).

When the General Assembly enacted the Criminal Sentencing Reform Act of 1989, the offense of criminally negligent homicide replaced the crime of involuntary manslaughter. Sentencing Comm'n Comments to Tenn.Code Ann. § 39–13–212; *Farner*, 66 S.W.3d at 198. Recognizing culpability for deaths resulting from criminal negligence was not new, however; we long recognized culpability for such deaths under the involuntary manslaughter statute. *See, e.g., Roe v. State*, 210 Tenn. 282,

358 S.W.2d 308, 314 (1962) ("Where one unintentionally causes another's death by conduct not amounting to a felony [*malum prohibitum*] and not *malum in se,* but which constitutes gross and culpable negligence, he is guilty of involuntary manslaughter."); *see also State v. Johnson,* 541 S.W.2d 417, 419 (Tenn.1976); *Copeland v. State,* 154 Tenn. 7, 285 S.W. 565, 566 (1926).

In recognizing that "gross and culpable" negligence can render a defendant criminally liable, we have also long recognized that the negligence "must be of a higher degree than is required to establish negligence upon a mere civil issue. . . ." *Copeland,* 285 S.W. at 566. *See also* Sentencing Comm'n Comments to § 39–13–212 ("The mens rea for criminally negligent homicide . . . makes clear that simple negligence, as defined in civil law, is insufficient for criminal liability."). Indeed, in its comments to section 39–11–302, the Sentencing Commission noted that "[t]he proposition that criminal liability be based on a higher degree of negligence than that required for civil liability is well settled." *See also* Leslie Yalof Garfield, *A More Principled Approach to Criminalizing Negligence: A Prescription for the Legislature,* 65 Tenn. L.Rev. 875, 889 (1998) (noting that the requirement of "something more than ordinary negligence" for criminal prosecution in English law dates to the sixteenth century).

■ In sum, we must examine the defendant's conduct to determine (1) whether a substantial and unjustifiable risk existed at the time of the conduct or resulting from the conduct; (2) whether, using a subjective standard, the defendant failed at the time of the conduct to perceive the risk; and (3) whether that failure was a *gross* deviation from the standard of care of an ordinary person under the circumstances.

The Court of Criminal Appeals held that the evidence was sufficient to convict Ms. Jones of criminal negligence, concluding that she "knew that by failing to place her child in a child restraint seat, she was exposing her child to serious bodily harm or death." The court cited Ms. McClain's testimony that Ms. Jones had been verbally informed of child restraint laws and was given written information on vehicle safety. The court also cited the visor warnings and the fact that Ms. Jones and the child's father had a child restraint seat and had used it on other occasions. Finally, the court noted that "during the year prior to the accident, assorted public service announcements in print and television were circulated regarding the importance of using child restraint seats."

We disagree with the Court of Criminal Appeals' conclusion. Viewing the evidence in the light most favorable to the State, as we must, and applying a subjective point of view, as we must, we conclude that the evidence failed to establish that Ms. Jones was criminally negligent. We have little doubt that holding a two-year-old child on one's lap in front of an air bag constitutes a substantial and unjustified risk. However, we must determine whether there was sufficient evidence to permit a rational trier of fact to conclude that Ms. Jones' failure to perceive that risk was a gross deviation from the standard of care. For several reasons, we cannot say that there was.

First, although the State introduced a collection of newspaper articles and two television "spots" to show that information about safely transporting children was available to the community, nothing in the record indicates that Ms. Jones actually saw or read any of that information. Moreover, we disagree with the State that whether the conduct of Ms. Jones was a gross deviation from the standard of care

can be established with reference to an advertising campaign, however well-intentioned that campaign might have been.

Second, the articles and television spots entered into evidence illustrate how new the risk of air bags was in 1998. According to one of the articles, 1999 was the first year that all cars had passenger-side air bags. Michele Baum, *Education Key to Air-bag Safety for Young Riders*, Chattanooga Times, February 15, 1997.

Third, the very fact that there was a need for a large-scale public information campaign aimed at educating parents about child car safety indicates, sadly, how many people in the community simply were not using child safety restraints at the time of the accident. In fact, one of the newspaper articles in the record, published on October 28, 1998—just twelve days before the accident—noted that a "recent survey" in Hamilton County had found that "only about sixty percent (60%) of youngsters observed riding in cars and trucks were restrained. Some were sitting in laps." Judy Frank, *Buckle Up Your Child*, Chattanooga Free Press, Oct. 28, 1998, at E1. If 40% of the children being transported in Ms. Jones' community were being transported without being properly restrained at the time of the accident, it would be difficult for a rational trier of fact to conclude that it was a gross deviation from the standard of care at the time of

the accident for Ms. Jones to transport her child improperly.[4]

Finally, the State also introduced evidence that Ms. Jones had received information about car seat safety upon her discharge from the hospital after the birth of her son. That information advised parents to, among other things, always use car seats and to "never hold a child in your lap" in the car. Additionally, the State cited the air bag warning on the passenger-side visor.[5] Although Ms. Jones' failure to heed these warnings and to perceive the danger posed by sitting with her child on her lap in front of an air bag may have been negligent, our cases illustrate that it simply does not rise to the level of *gross* negligence necessary to uphold a conviction for criminally negligent homicide.

Tennessee courts have sustained convictions for criminally negligent homicide only where a "risk is of such a nature and degree that injury or death is *likely and foreseeable*." *State v. Gillon*, 15 S.W.3d 492, 498 (Tenn.Crim.App.1997) (emphasis added). For example, in *State v. Goodwin*, a jury found the defendant guilty of criminally negligent homicide where the defendant had left a cocked shotgun in the woods fifty feet behind a house in a crowded neighborhood. Two children found the gun; it accidentally discharged, killing one child and severely injuring the other. Concluding that the defendant had "exercised extremely poor judgment in his han-

---

4. The legislature has recognized the widespread failure of motorists to comply with the child restraint statute and has attempted to address the problem. *See* Tenn.Code Ann. § 55–9–607 (1998) (requiring the Department of Health and Safety to initiate an educational program designed to increase compliance with seat belt and child restraint laws) and Tenn.Code Ann. § 55–9–610 (1998) (requiring the Department to prioritize programs aimed at increasing compliance with child restraint laws).

5. We note, however, that the warnings in the rental car were equivocal about the risk air bags pose to children. The visor warning stated that "[c]hildren 12 and under can be killed by the air bag," while the seat-belt warning advised parents: "Before Securing a forward-facing child restraint, ALWAYS move the passenger seat as far back as it will go." Thus it was unclear from the warnings whether it was safe to seat a child in the front passenger seat.

dling of an inherently dangerous weapon," this Court affirmed the judgment. 143 S.W.3d at 779; *see also State v. Clifton*, 880 S.W.2d 737, 743 (Tenn.Crim.App.1994) (defendant guilty of criminal negligence in firing a gun in the general direction of another person); *State v. Butler*, 880 S.W.2d 395, 396–97 (Tenn.Crim.App.1994) (defendant guilty of criminal negligence in accidental shooting).

We have consistently applied the requirement that death or injury be likely and foreseeable in cases involving automobile accidents. In *Roe v. State*, a jury found the defendant guilty of involuntary manslaughter on a criminal negligence theory where she locked her husband out of the car and then drove off, dragging him alongside the vehicle. 358 S.W.2d at 314–15. This Court affirmed, holding that the victim's death was the "natural and probable consequence" of the defendant's negligence. *Id.* In *Reed v. State*, 172 Tenn. 73, 110 S.W.2d 308 (1937), a defendant who pulled into "heavy and closely approaching opposing traffic" to pass a truck was guilty of involuntary manslaughter because the resulting collision was "not only a probable result but almost an inevitable result of such negligence as the defendant's." *Id.* at 308; *see also Gillon*, 15 S.W.3d at 498 (defendant was criminally negligent in running a stop sign, entering a divided highway, and crossing the median to the far side); *State v. Ramsey*, 903 S.W.2d 709, 712 (Tenn.Crim.App.1995) (injury or death was likely and foreseeable where the defendant was "driving fast and carelessly on a hilly, curvy road and [the defendant] consciously disregarded that risk by driving in such a manner.").

Likewise, automobile cases in which someone other than the driver was criminally negligent further illustrate the level of negligence required for a finding of a "gross deviation" from the standard of care. In *Flippen v. State*, 211 Tenn. 507, 365 S.W.2d 895 (1963), this Court held that a passenger was criminally negligent in failing to alert the intoxicated driver that he had struck another car, sending it off the road and into a lake, and for assisting the driver in concealing the car after the accident. *Id.* at 898–99. In *Freeman v. State*, 211 Tenn. 27, 362 S.W.2d 251 (1962), this Court held that the defendant was criminally negligent in permitting his intoxicated companion to drive his (the defendant's) car, knowing that the brakes were defective. *Id.* at 253; *see also Farner*, 66 S.W.3d at 198–206 (holding that a drag race co-participant's negligence did not bar the defendant's conviction for criminally negligent homicide, but reversing the conviction because the jury was not adequately instructed on proximate cause).

In contrast, ordinary negligence or inattention on the part of a mother does not rise to the level of gross negligence, even if the mother's conduct contributes to the death of her child. In *State v. Davis*, 798 S.W.2d 268 (Tenn.Crim.App.1990), the defendant was convicted of involuntary manslaughter in the drowning of her two-year-old son. The Court of Criminal Appeals held that there was insufficient evidence of criminal negligence to sustain the conviction because the mother had assumed the child was being watched by his stepfather and grandmother. *Id.* at 272–73. In *State v. Owens*, the Court of Criminal Appeals held that there was insufficient evidence to convict the defendant of criminally negligent homicide in the death of her severely disabled eleven-month-old daughter even though the mother had removed the child from a respiratory monitor and had not given her prescribed medications. "Although some carelessness and negligence on the part of the [defendant] is shown in this record," the court held, "we cannot say it rose to the level of gross negligence.... It is not sufficient to say, with

20/20 hindsight, that the [defendant] could have, or should have, done some things differently." 820 S.W.2d at 760. In contrast, in *State v. Adams*, 916 S.W.2d 471 (Tenn.Crim.App.1995), the Court of Criminal Appeals affirmed the conviction of a defendant who had negligently caused the death of her three-year old niece by inflicting blunt trauma wounds to her head. *Id.* at 476–77. Clearly in that case, unlike the previous two cases and unlike the case at bar, the victim's death was a likely and foreseeable result of the defendant's conduct.

In sum, the above cases demonstrate that something much greater than the want of ordinary care shown by Ms. Jones is necessary to affirm her conviction. There must be a *gross* deviation from the standard of care. We were unable to find a case anywhere in the country holding a parent criminally liable for a child's death based on the conduct of placing the child in front of a passenger-side air bag. Viewing all the evidence in the light most favorable to the prosecution, the evidence is not sufficient to permit a rational trier of fact to find Ms. Jones criminally negligent beyond a reasonable doubt. We therefore reverse her conviction.

We note that our holding comports with the provisions of the child restraint law in effect at the time of the accident. Although the child restraint law does not apply to Ms. Jones as a passenger rather than a driver, *see* Tenn.Code Ann. § 55–9–602(a) (1998) (amended 2004), the child restraint statute in effect at the time of the accident permitted a mother to remove her child from its car seat to nurse the child or to "attend[ ] to its other physiological needs." *Id.* The legislative determination that it was permissible for a mother to hold a child for such non-emergency purposes, rather than keeping the child in a restraint, also militates against a finding that it was a gross deviation from the standard of care for Ms. Jones to do so in this case.[6]

### *Conclusion*

The death of a child is a terrible tragedy, particularly when, as here, the death might have been prevented. But however tragic Carlon's death was, the evidence was insufficient to support a conviction for criminally negligent homicide because the defendant's conduct did not constitute a gross deviation from the standard of care. The judgment of the Court of Criminal Appeals is reversed, and the conviction is dismissed. Costs of the appeal are taxed to the State of Tennessee for which execution may issue if necessary.

---

6. Because we dismiss Ms. Jones' conviction due to insufficient evidence, we do not reach her arguments that her conduct was not the proximate cause of Carlon's death and that the trial court's instruction to the jury on proximate cause was erroneous.