IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 24, 2018 Session

## STATE OF TENNESSEE v. GORDON SCOT KATZ

**Appeal from the Circuit Court for Anderson County**
**No. B6C00275        Donald Ray Elledge, Judge**

———————————————————

### No. E2017-02516-CCA-R3-CD

———————————————————

An Anderson County grand jury indicted the defendant, Gordon Scot Katz, with reckless endangerment with a deadly weapon. Following trial, a jury found the defendant guilty of the same, and the trial court imposed a sentence of two years. On appeal, the defendant challenges the sufficiency of the evidence to support his conviction and alleges the trial court erred when denying the defendant's request to cross-examine a witness regarding pending criminal charges and that the State presented alternate theories of liability, thereby calling the unanimity of the jury's verdict into question. After hearing the arguments of the parties, reviewing the record, and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

W. Ethan Smartt, Knoxville, Tennessee, for the appellant, Gordon Scot Katz.

Herbert H. Slatery III, Attorney General and Reporter; Jeff D. Zentner, Assistant Attorney General; Dave Clark, District Attorney General; and Anthony J. Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

The night of July 25, 2015, and early the morning of July 26, 2015, the defendant and Bruce McCullough were drinking together at Throttle Down, a bar in Oak Ridge, Tennessee owned by Larry Dodson. Approximately seventy-five people patronized the bar that night. McCullough became highly intoxicated and was rude to a bartender. Mr.

Dodson, Mike Glover, and Gregory Manning, all of whom were working at the bar that night, asked the men to leave. Mr. Dodson and Mr. Glover followed the defendant and McCullough out the door but turned to go back inside before seeing where the men went after walking into the parking lot.

Around 1:30 a.m., about thirty to forty minutes after the defendant and McCullough left, Mr. Dodson heard six rapid gunshots outside the bar. Mr. Dodson ran outside and did not see anything out of place. Mr. Manning, however, was in the parking lot, also heard the gunshots, and saw the top of a blue four-door car drive past. Mr. Manning initially thought the vehicle belonged to McCullough because he had seen McCullough driving it in the past, but he later identified it as belonging to the defendant. At the time, there were fifty to sixty people in the bar. Mr. Dodson closed the bar and asked someone to call the Oak Ridge Police Department.

Kimberly Renee Hacker was in the restroom of the bar at the time. While washing her hands, Ms. Hacker heard what sounded like fireworks exploding. She then felt wood hit her hair, neck, and ear. Realizing she heard gunshots, Ms. Hacker ducked to the ground and remained there for approximately ten minutes. Scared, Ms. Hacker did not leave the bathroom until it was quiet and she could hear talking outside the restroom. When she exited, the people in the bar were upset and pacing.

Officer Kevin Craig and Detective John Criswell, both with the Oak Ridge Police Department, were called to the scene early the morning of July 26, 2015. They observed five bullet strikes on the building. Inside the building, they found bullet holes in the office, both restrooms, and the east wall of the bar, close to the exit. The officers took photographs of the scene and interviewed witnesses. Officers Craig and Criswell later went to the defendant's house to speak with him, but he was not home.

When interviewed, the defendant told Officer Craig he went to the bar that evening with McCullough. The defendant drove his blue Hyundai. After being asked to leave, McCullough and the defendant got back into the blue Hyundai, and the defendant drove to another bar. The defendant then dropped McCullough off at home and drove to a friend's house for the night. The defendant denied owning firearms.

Officer Craig subsequently obtained a search warrant for the defendant's home and vehicle. While officers did not find any firearms, they did find an unfired bullet inside the defendant's home and several unfired bullets under the carpet lining the trunk of his vehicle. Officers also found an empty nine-millimeter Glock box inside the defendant's residence.

The State called Mr. Davidson, Mr. Manning, Ms. Hacker, and Officer Craig as witnesses at trial, and all rendered testimony consistent with the foregoing. The State additionally called McCullough. Prior to taking the stand, McCullough's attorney notified the parties that McCullough intended to invoke his Fifth Amendment rights, so in a hearing outside the presence of the jury, the State offered McCullough full immunity from liability for potential related criminal charges, including perjury and engaging in criminal activity the night of July 25 and early the morning of July 26, 2015. During the hearing, McCullough additionally raised his concern he would be questioned about a pending aggravated domestic assault charge, and the trial judge ruled the pending charge was irrelevant.

In the presence of the jury, McCullough testified that after leaving the bar early the morning of July 26, 2015, he and the defendant went to the defendant's house. The defendant handed him a rifle, and they got back into the defendant's car. The defendant then drove by the bar and said, "Okay." In response, McCullough fired shots towards the top of the building. Following the shooting, the defendant drove McCullough home, and McCullough went to bed.

McCullough admitted that in February, 2016, he told Officer Craig that while driving, the defendant fired an automatic handgun out of the front passenger side window, reaching across McCullough, who was reclined in the front passenger seat, to do so. Then, two days before trial, McCullough told the prosecutor he could not clearly remember the events of July 25 and July 26, 2015. When questioned about his inconsistent stories, McCullough admitted he had been granted full immunity relating to perjury and his actions on July 25 and 26, 2015. McCullough further explained he changed his story because he now wanted to tell the truth. McCullough acknowledged he sent the defendant a text at 5:48 a.m. on March 1, 2015, stating, "Calling later saying it was me please look in on mom IM not going to b alive anymore I'll clear U with my life love U," yet he never called authorities and confessed to the shooting.

Following McCullough's testimony, the trial court held a bench conference and told the parties an instruction on facilitation of reckless endangerment with a deadly weapon would be added to the jury form. During the bench conference, the defendant stated that after the State closed its proof, he intended to recall McCullough as a witness and ask about his pending aggravated domestic assault charge. The trial court again reiterated its ruling that questions regarding pending charges, as opposed to actual convictions, were improper and should not be asked.

The defendant declined to testify and did not present any additional evidence. After hearing closing arguments, being charged, and deliberating, the jury found the defendant guilty of reckless endangerment with a deadly weapon. The trial court

subsequently sentenced the defendant to two years of incarceration. The defendant filed a motion for a new trial and amended motion for a new trial in which he argued, in part: the evidence was insufficient to support his conviction; the trial court erred when denying defense counsel the opportunity to cross-examine McCullough about his pending aggravated domestic assault charge; and the State presented alternative theories of guilt, thereby creating uncertainty as to whether the jury reached a unanimous verdict. The trial court denied the motion, and this timely appeal followed.

## *Analysis*

### I.    Sufficiency

The defendant contends his conviction for reckless endangerment with a deadly weapon was based on the uncorroborated accomplice testimony of McCullough, and therefore insufficient to support his conviction. Based on our review of the record and the arguments of the parties, in addition to McCullough, the State presented the independent corroborating testimony of Mr. Davidson, Mr. Manning, and Officer Craig. This evidence was sufficient to support the defendant's conviction. The defendant's argument to the contrary is without merit.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The jury convicted the defendant of reckless endangerment with a deadly weapon, a Class E felony. Pursuant to Tennessee Code Annotated section 39-13-103, the State was tasked with proving that, through the use of a deadly weapon, the defendant recklessly engaged in conduct that placed or could have placed another person in imminent danger of death or serious bodily injury. Tenn. Code Ann. § 39-13-103(a)(b). A person acts recklessly "when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur [,]" and "[t]his risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." Tenn. Code Ann. § 39-11-302(c). "Deadly weapon" is defined as "a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tenn. Code Ann. § 39-11-106(a)(5). The threat of death or serious bodily injury is imminent when a person is "placed in a reasonable probability of danger as opposed to a mere possibility of danger." *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999). The "zone of danger" is "that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." *Id.* Accordingly, the State is required to prove that "a person or class of person were in an area in which a reasonable probability of danger existed." *Id.*

"A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401. Criminal responsibility for the actions of another arises when "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402. Criminal responsibility is not a separate crime; it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *State v. Lemacks*, 993 S.W.2d 166, 170 (Tenn. 1999).

The defendant argues McCullough, an accomplice, was the only witness to testify that the defendant owned the gun, handed it to McCullough, and directed McCullough to shoot it in the direction of the bar, and in the absence of corroborating evidence, this proof was insufficient to support the defendant's conviction. "[A] conviction may not be based solely upon the uncorroborated testimony of an accomplice to the offense." *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001) (internal citations omitted). "When the only proof of a crime is the uncorroborated testimony of one or more accomplices, the evidence is insufficient to sustain a conviction as a matter of law." *State v. Jones*, 450 S.W.3d 866, 888 (Tenn. 2014) (internal citations omitted). Our supreme court has offered this explanation for the requirement that accomplice testimony be corroborated:

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*Bane*, 57 S.W.3d at 419 (internal quotation omitted).

Here, independent of McCullough's testimony, Mr. Davidson and Mr. Manning testified that the defendant was at the bar the evening of July 25, 2015, drinking with McCullough. The men were asked to leave due to McCullough's poor behavior and escorted out of the bar and into the parking lot. Less than an hour later, Mr. Davidson and Mr. Manning heard five to six gunshots outside. Mr. Manning simultaneously observed the top of a blue car drive past the bar. Mr. Manning initially thought the car belonged to McCullough but later identified it as belonging to the defendant. At the time of the shooting, there were fifty to sixty people inside the bar, including Ms. Hacker, who testified that she was washing her hands in the women's restroom when a bullet struck a nearby wall, causing pieces of wood from the wall to land on her head and neck. Officer Craig testified that the defendant denied gun ownership, yet he found an unfired bullet inside the defendant's home and several unfired bullets in the trunk of the defendant's blue car. While circumstantial, this evidence was sufficient to establish the commission of a crime and connect the defendant to it.

In addition, McCullough testified that he was a passenger in the defendant's car early the morning of July 26, 2015. While driving past the bar, the defendant handed him a firearm and said, "Okay," signaling to McCullough he should begin shooting. McCullough then fired multiple shots in the direction of the bar.

McCullough's testimony was only one piece of the evidence presented by the State and was sufficiently corroborated by Mr. Davidson, Mr. Manning, Officer Craig, and Ms. Hacker. In its totality, the evidence established that while driving past Throttle Down, the defendant handed a loaded firearm to McCullough, an individual so intoxicated he had been kicked out of the same bar minutes earlier due to his belligerent behavior, and signaled for him to shoot. At the time, the bar was open and full of patrons. Based on this evidence, a rational jury could find the defendant recklessly engaged in conduct that placed another person or class of people in imminent danger of death or serious bodily injury. Through its finding of guilt, the jury accredited any inconsistencies in the evidence, including Mr. Manning's wavering testimony regarding the owner of the blue car, in favor of the State. The defendant is not entitled to relief on this matter.

## II.     Cross-Examination of McCullough

The defendant next contends the trial court erred when denying the defendant the opportunity to cross-examine McCullough pursuant to Rules 404 and 608 of the Tennessee Rules of Evidence regarding his pending aggravated assault charge. The State contends the defendant waived this argument by failing to properly preserve the issue for appeal. We agree with the State.

Tennessee Rule of Evidence 404(b) allows the admission of evidence of "other crimes, wrongs, or acts" so long as not used to "prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Prior to admitting such evidence, the trial court must, upon request, hold a hearing outside the presence of the jury, "determine that a material issue exists other than conduct conforming with a character trait," "upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence," "find proof of the other crime, wrong or act to be clear and convincing," and "exclude the evidence if its probative value is outweighed by the danger of unfair prejudice." *Id*. While the trial court may conduct a sua sponte Rule 404(b) hearing, it is only obligated to hold one upon the request of a party. *State v. Benjamin Gunn*, No. W2016-00338-CCA-R3-CD, 2017 WL 4861664, at * 12 (Tenn. Crim. App. Oct. 26, 2017), *no perm. app. filed*. The argument that evidence should have been admitted or excluded under Rule 404(b) is, therefore, waived when the defendant fails to request a hearing. *Id*.; *see also State v. Jones*, 151 S.W.3d 494, 498 n3 (Tenn. 2004) (finding, "[The defendant] did not request a 404(b) hearing at trial or in

[his] motions before the trial court. Accordingly, we do not consider whether the evidence should have been excluded under Tennessee Rule of Evidence 404(b).").

Tennessee Rule of Evidence 608(b), on the other hand, addresses the admissibility of evidence of specific instances of conduct, other than convictions of crime, for the purpose of attacking a witness's character for truthfulness. Tenn. R. Evid. 608(b). These specific instances of conduct cannot be proven by extrinsic evidence but, if probative of truthfulness or untruthfulness, may be asked about on cross-examination if the following procedures are followed:

(1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;

(2) The conduct must have occurred no more than ten years before commencement of the action or prosecution, but evidence of a specific instance of conduct not qualifying under this paragraph (2) is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interest of justice that the probative value of that evidence, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conduct before trial, and the court upon request must determine that the conduct's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the witness's privilege against self-incrimination when examined with respect to matters which relate only to character for truthfulness.

Tenn. R. Evid. 608(b). When a party fails utilize the procedural safeguards set forth in Rule 608, it waives any arguments of error on appeal. *State v. Hall*, 976 S.W.2d 121, 149 (Tenn. 1998).

In the present matter, McCullough stated during a hearing outside the presence of the jury that he would invoke his Fifth Amendment rights if called as a witness. In response, the State offered McCullough immunity from any criminal liability resulting from his actions on July 25 and 26, 2015, including potential perjury and false statement charges that could arise as the result of a statement given to law enforcement in February, 2016. McCullough accepted the offer, but his attorney clarified McCullough would continue to invoke his Fifth Amendment rights if questioned regarding a pending aggravated domestic assault charge. The State commented it would not ask about the pending charge, as it was irrelevant, and the trial court commented it would sustain such an objection "because domestic assault has nothing to do with the issues we have got here." At that time, the defendant failed to address his desire to question McCullough regarding the pending conviction.

When called as a witness by the State, McCullough admitted for the first time under oath that after being kicked out of Throttle Down the morning of July 26, 2015, he and the defendant returned to the defendant's house, the defendant grabbed a rifle, and the defendant and McCullough got back into the defendant's car. The defendant drove past the bar, handed McCullough the rifle, and encouraged McCullough to fire the rifle. McCullough then fired an unknown number of shots in the direction of the bar. The State questioned McCullough regarding the offer of immunity, and McCullough admitted to receiving full immunity in exchange for his testimony. The jury further heard McCullough's prior statement, in which he claimed that early the morning of July 26, 2015, the defendant fired shots from a semi-automatic handgun at the bar through the front passenger window of the defendant's car while McCullough reclined in the front passenger seat. McCullough admitted to changing his testimony since being granted full immunity, including immunity from criminal liability for the false statement given in October, 2016. On cross-examination, McCullough admitted he knew he was lying to police in February, 2016, and had since decided to be honest about the pertinent events.

After the questioning of McCullough ended, the defendant said he intended to recall McCullough after the close of the State's proof to question him regarding the pending aggravated domestic assault charge. The trial court questioned how the defendant could ask McCullough about a criminal charge, as opposed to a conviction, and the defendant pointed out McCullough is not a defendant to this matter. The defendant tried to make another point, but the trial court interrupted and ruled McCullough could only be impeached with prior convictions because "[y]ou can charge anybody with anything." The trial court further stated, "That's a totally improper question. And if you ask it, he will probably object. And then I will have to cure it with the jury." The defendant did not make any further attempts to call McCullough as a witness or question him regarding his pending aggravated domestic assault charge, nor

did he request a hearing on the same. The record is void of additional information regarding the charge, such as the underlying facts and the court in which the charge was pending.

In his brief to this Court, the defendant now alleges McCullough's aggravated assault charge stemmed from an attack on his elderly mother and would have been admissible under Tennessee Rules of Evidence 404(b) and 608(b) because the act was probative of the veracity of McCullough's testimony that the defendant handed him the gun and directed him to shoot at the bar. The defendant waived this argument by failing to properly preserve the issue for appeal. The defendant never requested a hearing under Rules 404(b) or 608(b), and the record does not contain any proof relating to the facts underlying McCullough's pending charge. In the absence of information regarding the conduct giving rise to the charge and the county in which it was pending, we are unable to determine whether evidence of the pending aggravated domestic assault charge met basic relevancy requirements, much less whether it would have been admissible pursuant to Tennessee Rules of Evidence 404(b) and 608(b). Not only did the defendant have a duty to follow the procedures mandated by Rules 404(b) and 608(b), but he also had a duty to prepare a record that conveyed a fair and accurate account of the trial court proceedings as related to the issues underlying his appeal. Tenn. R. App. P. 24(b); *Dearborne v. State*, 575 S.W.2d 259, 264 (Tenn. 1978). This issue has been waived.

We note the defendant attempted to bring the aggravated domestic assault conviction to the trial court's attention, and the trial court misstated the law as to the admissibility of pending convictions against a witness. In addition, McCullough's attorney indicated McCullough would invoke his Fifth Amendment rights if questioned regarding the pending aggravated domestic assault charge. Neither of these actions relieved the defendant of his duty to at least request a hearing under Rules 404(b) and 608(b) and state, on the record, why the pending charge was admissible. If, for example, the trial court had allowed McCullough to testify under Rule 608(b) only as to matters related to his veracity as a witness, such testimony would not have operated as a waiver of his privilege against self-incrimination. *State v. Dooley*, 29 S.W.3d 542, 551 (Tenn. Crim. App. 2000). Again, the proper procedure would have been to request a hearing under Rule 608(b), so the trial court could determine what information regarding the pending charge, if any, was relevant to the witness's character for truthfulness or other non-propensity evidence. It was the defendant's responsibility, as the proponent of the testimony, to ensure the utilization of the proper procedure, and he failed to do so. The defendant has waived this issue on appeal and is not entitled to relief.

## III.    Unanimity of Jury Verdict

- 10 -

Finally, the defendant contends the State presented alternate theories of guilt during its closing argument, thereby raising doubts the jury rendered a unanimous verdict. The State asserts the defendant waived this argument by failing to object at trial and, regardless, the unanimity of the jury's verdict was not called into question because the State simply offered alternate theories of criminal responsibility and direct liability based on a single criminal occurrence for a single criminal offense. We agree with the State.

When faced with the possibility of incarceration or a fine of more than fifty dollars, criminal defendants have a constitutional right to a jury trial that includes the right to a unanimous verdict. *Lemacks*, 996 S.W.2d at 169-170. The unanimity of a jury verdict may be called into question "where the prosecution presents evidence to the jury that tends to show more than one criminal offense, but the underlying indictment is not specific as to the offense for which the accused is being tried" and "where an accused is indicted and prosecuted for a single offense, but the jury is permitted to consider multiple criminal acts of the type which, if found beyond a reasonable doubt, would each support a conviction of the offense charged." *Id*. When a single offense is at issue, the State's presentation of alternate theories of direct liability and criminal responsibility does not violate the defendant's right to a unanimous jury verdict. *Id*. at 171.

During the State's closing argument, the prosecutor stated:

So if you believe Mr. McCullough's testimony here today, [the defendant] is guilty. If you believe Mr. McCullough's statement to this officer earlier, [the defendant] is guilty. The only way [the defendant] is not guilty is if you think Mr. McCullough had everything to do with this case and [the defendant] had nothing to do with it and everybody was wrong about the car.

At the time, the defendant failed to object to the State's presentation of alternate theories of liability. The defendant has, therefore, waived the issue on appeal. Tenn. R. App. P. 36(b); *see also State v. Thomas*, 158 S.W.3d 361, 412 (Tenn. 2005) (appendix) (when a contemporaneous objection is not made to allegedly objectionable statements by the prosecutor during closing arguments, the defendant is not entitled to relief on appeal).

Regardless of waiver, the State's closing argument did not violate the defendant's right to a unanimous jury verdict, as it is well-established that criminal responsibility is not a separate offense. *State v. Welcome*, 280 S.W.3d 215, at (Tenn. Crim. App. 2007). The State merely presented alternate theories under which the defendant could be convicted of reckless endangerment with a deadly weapon, a single offense, as a result of

the shooting occurring July 26, 2015, a single occurrence. The defendant's argument to the contrary is not well-taken, and he is not entitled to relief on this issue.

### *Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.


 

 

_____
J. ROSS DYER, JUDGE