

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00315-CR

CORAIMA RODRIGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 286th District Court
Cochran County, Texas
Trial Court No. 16-04-1519, Honorable Pat Phelan, Presiding

March 28, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Coraima Rodriguez, appellant, appeals her final conviction for manslaughter. Her sole issue involves the sufficiency of the evidence supporting the jury's verdict and conviction. She believes that the evidence was insufficient to establish, beyond reasonable doubt, the culpable *mens rea* of recklessness. That is, "the State failed to prove that [appellant's] actions—overcorrecting when she drifted off the roadway and failing to secure her children in the vehicle—constituted the extreme degree of risk necessary to prove recklessness. Particularly, the risk posed did give rise to a likely or

imminent probability that death would occur from her actions. At best, the evidence at trial demonstrates that [appellant] was negligent." The State did not favor us with a brief replying to appellant's contention. Nonetheless, we affirm the conviction given the facts and law involved.

The underlying facts involved appellant placing her two children in a Chevy Tahoe, failing to secure their movement via seatbelts or other physical restraints such as child safety seats, driving the vehicle down a rural road, approaching a curve at around 67 mph, running off the road, and overcorrecting the vehicle. Overcorrecting the vehicle resulted in the Tahoe flipping several times and stopping within a cotton field about 100 feet from the roadway. As the vehicle flipped, the two children were thrown from it. One died as a result of being thrown from the vehicle. The children were two and three years old at the time. Some evidence indicates that appellant's own seatbelt had been fastened when she lost control of the Tahoe.

Despite the evidence that her own seatbelt was fastened, appellant explained to the investigating trooper that:

> the only reason the kids weren't buckled up was because it was Morton, Texas, and she generally didn't buckle the children in safety belts. She also advised that she was borrowing the vehicle from a friend and stated that the child safety seats were in her vehicle, who [sic] she was allowing another individual to borrow.

Via the amended indictment, the State charged appellant with "recklessly caus[ing] the death of an individual, namely, [C.R.], by failing to negotiate a curve in the roadway while operating a vehicle occupied by [C.R.] while [C.R.] was not secured in a child safety

seat, as required by Section 545.412, Texas Transportation Code."[1]    As previously mentioned, the jury found appellant guilty of the charge.

The pertinent standard of review was recently described in *Johnson v. State*, 560 S.W.3d 224 (Tex. Crim. App. 2018) and need not be reiterated.   Furthermore, one commits manslaughter "if he recklessly causes the death of an individual."  TEX. PENAL CODE ANN. § 19.04 (West 2011).  For purposes of manslaughter, one "'acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur.'" *Schroeder v. State*, 123 S.W.3d 398, 400-401 (Tex. Crim. App. 2003), (quoting TEX. PENAL CODE § 6.03(c)); *Mornes v. State*, No. 05-17-00289-CR, 2018 Tex. App. LEXIS 6223, at *35 (Tex. App.—Dallas Aug. 18, 2018, pet. ref'd) (mem. op., not designated for publication); *accord, Suarez v. State,* No. 05-03-00096-CR, 2003 Tex. App. LEXIS 10799, at *10 (Tex. App.—Dallas Dec. 30, 2003, pet. ref'd) (not designated for publication) (involving the charge of reckless endangerment arising from the failure to assure that a child's seatbelt was engaged and stating that "recklessness would exist if [appellant] was aware of, but consciously disregarded, a substantial and unjustifiable risk that her failure to supervise A.E. placed A.E. in imminent danger of death, bodily injury, or physical or mental impairment").

In *Suarez*, appellant's child fell from the window of a vehicle stopped at a red light, which vehicle was being operated by her mother, Suarez.  *Suarez*, 2003 Tex. App. LEXIS 10799, at *1.  That resulted in another car hitting and killing the child.  *Id.* at *2.  The

---

[1] Section 545.412 of that Code states that a "person commits an offense if the person operates a passenger vehicle, transports a child who is younger than eight years of age, unless the child is taller than four feet, nine inches, and does not keep the child secured during the operation of the vehicle in a child passenger safety seat system . . . ."  TEX. TRANSP. CODE ANN. § 545.412(a) (West Supp. 2018).

record illustrated that Suarez had not utilized either a seatbelt or a child safety seat to restrain the youth's movements while in the car. The incident resulted in the State prosecuting appellant for recklessly endangering the child. At trial, an investigating officer opined that fastening the seatbelt would have prevented one from falling from the moving vehicle. *Id.* at *10. Nonetheless, Suarez attacked her eventual conviction by contending that the State failed to prove she 1) committed a reckless act or recklessly omitted to do an act or 2) engaged in conduct placing the child in imminent danger. The reviewing court rejected the contention. It began by alluding to the general duty of a parent to care, control, and protect his child imposed by the Texas Family Code. *Id.* at *9-10; *see* TEX. FAM. CODE ANN. § 151.001(a)(2) (West 2014) (stating that a parent has such a duty). This duty, coupled with the effect of § 545.412(a) of the Transportation Code, obligated Suarez to secure the child by either a safety seat or seatbelt, the court continued. *Suarez v. State*, 2003 Tex. App. LEXIS 10799, at *8. Given that she failed to do that, the reviewing court opined that "Suarez is guilty if she was reckless" in committing the omission. *Id.* at *10.

The aforementioned law coupled with the aforementioned evidence then led to the reviewing court to find evidence of recklessness. It concluded that "[i]f the trial court believed that A.E. was not secured in a seatbelt after the car left Corral's house, then Suarez's failure to observe that A.E. was not belted when Suarez stopped at the red light constitutes ***reckless*** conduct within the allegations of the indictment." *Id.* at *11-12 (emphasis added). Thus, "a rational trier of fact could have found that Suarez's ***reckless*** failure to supervise A.E. as to her seatbelt, an omission, placed A.E. in imminent danger

4

of death, bodily injury, or physical or mental impairment beyond a reasonable doubt." *Id.* at \*12 (emphasis added). We deem *Suarez* particularly instructive.

Like in *Suarez,* we have testimony that appellant's failure to secure her children within the Tahoe contributed to the death of her child. Other evidence indicated that because no two accidents are alike, unsecured children within a vehicle may survive a crash. Yet, the trooper who provided the foregoing statement followed that with "I think we can say if they were buckled up the way they should have, there is a very much higher probability that they would have lived." The same trooper also testified, without objection, that " knowing that she is not going to buckle up her kids and knowing that her kids weren't buckled is a reckless act in itself."

Other evidence indicated appellant approached the curve in question at 67 mph. The trooper indicated that before the curve appeared a yellow cautionary sign advising drivers to slow to 55 mph. Though appellant questioned whether this sign was placed at the locale after the accident and the trooper's response may have created some uncertainty, the jury remained free to conclude the sign was present given the initial testimony about it being there. *See Cagle v. State*, 976 S.W.2d 879, 882 (Tex. App.— Tyler 1998, no pet.) (stating that contradictions or conflicts in a witness' own testimony or in the testimony of several witnesses do not destroy the sufficiency of the evidence; the contradictions relate to the weight of the evidence and the credibility given the witness by the factfinder). It also allowed the jury to accept the trooper's comment that the "safe" speed for traversing the curve was 55 mph.

That appellant acquired car seats for the children is clear from the record. Thus, a factfinder could reasonably infer that she knew of their purpose and the purpose of her

5

own seatbelt which had been fastened. Yet, she opted to forego utilizing the car child seats simply because she was driving someone else's car.

Like *Suarez*, appellant had the duty to care and protect her children. That duty coupled with § 545.412(a) of the Transportation Code obligated her to do more than simply place her children within the Tahoe; instead, she was obligated to secure her children via a seatbelt or safety seat. *Suarez v. State*, *supra.* A factfinder "need not check . . . common sense at the door" when called to serve on a jury. *Arteaga v. State*, 521 S.W.3d 329, 336 n.11 (Tex. Crim. App. 2017). The jury was free to reasonably infer that allowing small children to remain unrestrained within a moving car traveling at a high rate of speed posed a substantial and unjustifiable risk of harm to the children and that a parent who had safety seats for her children (like appellant) understood that. Driving 67 mph posed a grave likelihood that unsecured children would be thrown around the vehicle should it come to a sudden stop, strike another vehicle, be struck by another vehicle, or fail to negotiate a curve having a posted cautionary safe speed of 55 mph. They may not die, according to the trooper, but the probability of their survival grows through the use of child restraints, according to the same witness. And, it is that witness who expressly characterized appellant's decision as reckless, which characterization the jury was free to accept in assessing if appellant was reckless. *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) (stating that "[o]nce evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes"); *see also Thornton v. State,* 425 S.W.3d 289, 305 n.82 (Tex. Crim. App. 2014) (stating that "'a reviewing court is permitted to consider all evidence in the trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination'").

That the trooper, and apparently the jury, so concluded is not novel given *Suarez* and its conclusion there that the parent's failure to see that her child was properly restrained constituted recklessness.

So, in presenting evidence of appellant driving as and where she did without securing her children, the State presented to a rational factfinder more than some evidence to conclude, beyond reasonable doubt, appellant consciously disregarded a substantial and unjustifiable risk that the death of her young kids would result.[2]  Such leads us to overrule appellant's argument that the State failed to prove appellant recklessly caused the death of C.R.

The judgment is affirmed.

Brian Quinn
Chief Justice

Do not publish.

---

[2] In so holding, we do not ignore appellant's argument that the failing to secure a child is not reckless conduct in Tennessee.  Aside from the fact that Texas is not Tennessee, the opinion to which she cited, *State v. Jones*, 151 S.W.3d 494 (Tenn. 2004), illustrates that at the time of its rendition the law there was quite different from that here.  As the Tennessee Supreme Court observed, the Tennessee statute permitted "a mother to remove her child from its car seat to nurse the child or to 'attend[] to its other physiological needs'" when the accident happened. *Id.* at 503.  This swayed the court's decision as exemplified when it stated: "[t]he legislative determination that it was permissible for a mother to hold a child for such non-emergency purposes, rather than keeping the child in a restraint" militated "against a finding that it was a gross deviation from the standard of care for Ms. Jones to do so in this case." *Id.*  In other words, the Tennessee court hesitated to characterize the mother's action in *Jones* as a deviation from the standard of care when the Tennessee statute permitted such conduct.  Unlike Tennessee's, Texas statute required then and now the child to be restrained.  Again, this is Texas, not Tennessee.